UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:18-CV-3081-B |
| | § | |
| CYNTHIA LEECH, d/b/a LINDA'S LOUNGE, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s (Joe Hand) Motion for Final Default Judgment (Doc. 10), filed on May 22, 2019. For the reasons provided below, the Motion is **GRANTED**.

## I.

## BACKGROUND

This is an anti-piracy case brought under the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605, (FCA). Joe Hand markets and licenses closed-circuit, pay-per-view prizefighting events to commercial establishments. Doc. 11-2, Ex. B, Aff. Of Joe Hand, Jr. (Hand Aff.) ¶ 4. Joe Hand purchased and retained the commercial exhibition rights to the November 21, 2015 *Miguel Cotto vs. Canelo Alvarez* broadcast, including all undercard bouts and the main prizefight (hereinafter the "Event"). *Id.* Thereafter, Joe Hand marketed sub-licensing (commercial exhibition) rights for the Event to its commercial customers, including casinos, racetracks, bars, restaurants, and nightclubs, for a fee. *Id.* To prevent unlicensed establishments from

exhibiting the Event without a license, the transmission was electronically coded or "scrambled." Doc. 10, Mot. for Default J. ¶ 9(f). Establishments that had bought the broadcast rights were authorized by Plaintiff to receive the Event. *Id.* On November 21, 2015, Cynthia Leech, d/b/a Linda's Lounge, broadcasted the Event at her establishment, Linda's Lounge, without receiving the contractual authorization from Joe Hand or paying the fee required to do so. *Id.* ¶ 9(h).

On November 19, 2018, Joe Hand filed its Complaint, alleging that Defendant willfully violated the FCA for commercial gain. Doc. 1, Pl.'s Original Compl. It asks for statutory damages under the FCA, costs, attorney's fees, and interest. *Id.* ¶ 17. Although Defendant was served with process on December 10, 2018, she failed to answer or otherwise respond by the appropriate deadline. Doc. 5, Summons Returned Executed. Accordingly, Joe Hand requested an entry of default, which the Clerk of Court entered on February 12, 2019. Doc. 8, Clerk's Entry of Default. On May 22, 2019, Joe Hand moved for default judgment. Doc. 10, Mot. for Default J. To date, Defendant has not made an appearance in this case.

## II.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff. Fed. R. Civ. P. 55(a)–(b). That being said, "[d]efault judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). A party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*,

75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether a default judgment should be entered against a defendant, courts have developed a three-part analysis. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. First, courts consider whether the entry of a default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The relevant factors include:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover."). In doing this, courts should assume that, due to its default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* But a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *See, e.g., 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d at 384. Normally, courts should not

award damages without a hearing, unless detailed affidavits establish the necessary facts. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). But if the court can determine the amount of damages with mathematical calculation, by referencing the pleadings and supporting documents, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.

## ANALYSIS

Applying this three-part analysis, the Court ultimately concludes that a default judgment is (1) procedurally warranted; (2) supported by a sufficient factual basis in Joe Hand's Complaint; (3) and that, because the Court can determine the amount of damages with mathematical calculation by referencing information in the pleadings and supporting documents, a hearing is unnecessary. *See James*, 6 F.3d at 310. Thus, as explained below, Joe Hand is entitled to a default judgment against Defendant for her alleged FCA violations in the amount of $20,000 in statutory violations, plus $2,275 in attorney's fees and costs of court.

*A.     Whether An Entry of Default Judgment Is Procedurally Warranted*

After applying the six *Lindsey* factors to Joe Hand's Motion, the Court determines that default judgment is procedurally warranted. First, Defendant has not filed any responsive pleadings in the present matter, so there are no material facts in dispute. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Second, Defendant's "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [Joe Hand's] interests." *Ins. Co. of the W. V. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, given that

Defendant has had more than seven months to respond to Joe Hand's Complaint and more than a month to respond to the present Motion, or else explain why it has not done so, the grounds for default are clearly established. *Cf. Elite v. The KNR Group*, 216 F.3d 1080 (Table), 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curium) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to indicate Defendant's silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Joe Hand seeks only the relief the law provides it, and Defendant has no applicable defense to its claims, at least as far as this Court can see, which "mitigate[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, 2013 WL 1828671, at *3 (N.D.Tex. May 1, 2013). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default if challenged by Defendant. *Lindsey*, 161 F.3d at 893. Therefore, the Court concludes that default judgment is proper.

B.     *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendant is deemed to have admitted the allegations set forth in the Complaint. Nonetheless, the Court must review the pleadings to determine whether Joe Hand can establish a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.").

Joe Hand alleges Defendant "willfully intercepted and/or received the interstate communication of the [Event] or assisted in such actions." Doc. 1. Pl's Original Compl., ¶ 10. Then, according to Joe Hand, Defendant "unlawfully transmitted divulged, and published said

communication, or assisted in unlawfully transmitting, divulging, and publishing said communication to patrons in her Establishment." *Id.* This not only "infringed upon [Joe Hand's] exclusive rights" to broadcast the Event, *id.* ¶ 12, but also violated 47 U.S.C. § 553 and 605, *id.* ¶¶ 15–16, according to Joe Hand.

A person violates § 605 when he "intercept[s] any radio communication . . . or receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a)(6). Similarly, a person violates § 553 by "intercept[ing] and receiv[ing] or assist[ing] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* § 553(a)(1). The unauthorized interception of satellite or cable transmissions violates both §§ 553 and 605. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002). The pleadings establish that the Event was transmitted via closed circuit and encrypted satellite signal, and that Defendant intercepted the Event without authorization and broadcast it to patrons at Linda's Lounge for her own commercial benefit. Doc. 1. Pl's Original Compl., ¶¶ 7, 10. Joe Hand has therefore established a viable claim for relief under the FCA, and has provided Defendant with fair notice of its claim.

C.  *Damages*

"A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." *Ins. Co. of the W.*, 2011 WL 4738197, at *4 (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir.2002)). Damages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts. *See United Artists Corp.*, 605 F.2d at 857. If the amount of damages can be determined with mathematical calculation by reference to

the pleadings and supporting documents, a hearing is unnecessary. *Id.; James*, 6 F.3d at 370.

A party aggrieved by a violation of § 605 may elect to receive either actual damages or statutory damages. 47 U.S.C. § 605(e)(3)(C)(i). Statutory damages for each violation of the section must be awarded in an amount no less than $1,000 and no more than $10,000, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If the Court finds that a violation was committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may, at its discretion, increase the damage awarded by an amount of not more than $100,000. *Id.* § 605(e)(3)(C)(ii). An aggrieved party who prevails shall receive full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

1. <u>Statutory Damages</u>

Joe Hand maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . because of Defendant's unlawful actions." Doc. 10, Mot. for Default J., ¶ 21. For that reason, Joe Hand requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum—against Defendant.[1] *Id.* ¶¶ 18, 21. Joe Hand argues it is entitled to compensation because, as a result of Defendant's actions, it lost revenue, was denied the "'value, benefits and profits derived' from the unauthorized broadcast of the Event[,]" and lost out on "the value of [the] 'business investment, business opportunities, reputation, and goodwill'" it might have otherwise enjoyed. *Id.* ¶ 24 (quoting *Am. Television & Commc'ns. Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

---

[1] The Court notes that Joe Hand cannot recover under both §§ 553 and 605, even if it can demonstrate Defendant violated both. *Al-Waha Enters.*, 219 F. Supp. 2d at 775. Therefore, the damages inquiry will focus only on section 605, which allows Joe Hand a greater recovery. *Id.*

To support these assertions, Joe Hand presents an affidavit from Joe Hand, Jr., President of Joe Hand and "custodian of records." Doc. 11-2, Ex. B, Hand Aff., ¶ 1–2. Joe Hand "determined from [its] customers that the cause of the erosion of [its] customer base was the rampant piracy of [its] broadcasts by unauthorized and unlicensed establishments." *Id.* ¶ 5. In addition to the "company's loss of several million of dollars of revenue," establishments that lawfully broadcast programs also lose business and patrons. *Id.* ¶ 12. In sum, Defendant's actions damaged the goodwill and reputation of Joe Hand, and impaired both its right and ability to control and receive fees for transmitting its programs. *Id.* ¶ 13.

Courts have assessed different amounts of statutory damages when presented with violations similar to Defendant's. *See Joe Hand Promotions, Inc. v. Alima*, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) ($10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ($5,000). In light of the need to deter future violations, and considering the sublicensing fee of approximately $2,200 had Defendant paid to lawfully broadcast the Event, the Court determines that $5,000 in statutory damages is reasonable. Doc. 10, Mot. for Default J., ¶ 9(g); *see* Doc. 11-5, Ex. B-3, Travis Jenkins Aff., App. 60–61 (capacity of the establishment is approximately seventy-five people); Doc. 11-4, Ex. B-2, Rate Card, App. 59 (rate for establishment with 0–100 capacity is $2,200); *see also, e.g.*, *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ("Merely requiring Al-Waha to pay the price it would have been charged to obtain legal authorization to display the event does nothing to accomplish this object [to deter future violations of the FCA]."). Accordingly, the Court **GRANTS** Joe Hand's request for statutory damages and awards it $5,000.

### 2. Additional Damages

Joe Hand requests an additional $50,000 in damages under 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "Defendant's actions [were] willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Doc. 10, Mot. for Default J. ¶¶ 29, 33 (citations omitted). Joe Hand presents no evidence demonstrating Defendant willfully violated the FCA, but insists it could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* ¶ 30. Courts have generally found this reasoning persuasive, as there are limited means by which defendants can access closed-circuit, pay-per-view events, and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 777 (finding willfulness given the "limited methods of intercepting closed circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café, Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that Joe Hand's evidence and allegations are sufficient to support a finding of willfulness.

Further, the record indicates that Defendant exhibited the Event for either direct or indirect commercial gain, as there were approximately thirty to thirty-three individuals in the establishment the evening in question. Doc. 11-5, Ex. B-3, Travis Jenkins Aff., App. 60–61. While nothing indicates Defendant's establishment charged these patrons a cover for admission, it did display the Event on two flat-screen televisions and served beverages. *Id.* at 60; Doc. 11-1, Ex. A, Texas

Alcoholic Beverage Commission Permits, App. 4–37. This has been enough for other courts to find a commercial motive. *See Beck*, 2013 WL 5592333, at *2 (finding commercial motive because "patrons purchased food and/or drinks while viewing the Event" and because "it is obvious that commercial establishments show sports programs to draw business, not out of charity"); *Joe Hand Promotions, Inc. v. 152 Bronx*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (finding the number of televisions broadcasting the event relevant to determining commercial motive). It is enough for this Court, as well; there is sufficient evidence to establish Defendant had a commercial motive.

Having found willfulness and commercial motive, the Court moves to the statute's language. The FCA allows "the court, in its *discretion*," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii) (emphasis added). This leeway has led courts to different approaches and results. *See, e.g.*, *Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately eighty five to one hundred and twenty five patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding five times the statutory base award where the defendant broadcast the event in an urban area, and the Court noted the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding three times the base for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 960 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Joe Hand provided evidence of an auditing visit, where

investigator Travis Jenkins observed Defendant violating the FCA. Doc. 11-5, Ex. B-3, Travis Jenkins Aff., App. 60–61. The affidavit notes that Defendant's establishment was equipped with two televisions broadcasting Round 7 of the *Rigondeaux vs. Drian* match, and notes around thirty to thirty-three patrons were in attendance. *Id.* at 60. Nothing indicates Defendant charged patrons, or the investigator, a cover fee, or that she advertised her establishment as broadcasting the Event to attract a greater audience. *Id.*

Based on the damages awarded by other courts, the evidence before this Court— which reveals between thirty and thirty-three patrons present at Defendant's establishment and that no cover charge was used—and the need to deter future violations, the Court finds that an additional damages award of three times the base salary is reasonable. Thus, the Court **GRANTS** Joe Hand's request for additional damages and awards it $15,000.

3.  Attorney's Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. § 605(e)(3)(B)(iii). Here, that is Joe Hand, who seeks $1,800 worth of attorney's fees, plus $475 in court costs. Doc. 10, Mot. for Default J., ¶¶ 34–35; Doc. 11-6, Ex. C, Aff. of Jamie King (King Aff.), ¶¶ 7, 9. To support its request, it presents an affidavit from its counsel, Jamie King, who estimates his fee at $1,800, based on approximately seven hours of work at a rate of $250 per hour. Doc. 11-6, Ex. C, King Aff., ¶ 5–7. Given this estimate, as well as the evidence and circumstances of the case, the Court finds Joe Hand's request for $1,800 in attorney's fees to be reasonable.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (quoting *Jimenez v. Wood Cnty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

Although Joe Hand has not offered a complete set of invoices or other evidence proving King worked the number of hours he claimed he did on this case, the Court accepts his estimate of his time and rates as reasonable, given his experience with anti-piracy cases and the authorities he provides. Doc. 11-6, Ex. C, King Aff., App. 71–74. Accordingly, the Court makes no adjustment to these figures and **GRANTS** Joe Hand's request for $1,800 in attorney's fees.[2]

---

[2] In its proposed order, Joe Hand also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 10-1, Proposed Order. Although Joe Hand does not expound upon this request in its Motion, the affidavit of its counsel, Jamie King, lists various requests for fees that are contingent upon the occurrence of post-judgment events. Doc. 11-6, Ex. C, King Aff., App. 71–74. For example, Joe Hand seeks a conditional award of $5,000 to be granted should Defendant file a "post-judgment or pre-appeal motion," such as a motion to vacate. *Id.* at ¶ 8(b). Because this Court has granted reasonable attorney's fees for the work actually performed, and because Joe Hand has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court denies this request.

The Court further awards Joe Hand $475 in court costs, which reflect $400 in filing fees for the complaint and $75 in service of process fees. Doc. 11-6, Ex. C, King Aff., App. 74; Doc. 11-8, Ex. C-2, Service of Process Invoice, App. 76.

IV.

CONCLUSION

For the reasons discussed above, the Court **GRANTS** Joe Hand's Motion for Default Judgment (Doc. 10). In particular, the Court:

- **GRANTS** Joe Hand's request for statutory damages in the amount of $5,000 and for additional damages in the amount of $15,000, for a total award of $20,000;
- **GRANTS** Joe Hand's request for attorney's fees in the amount of $1,800;
- **GRANTS** Joe Hand's request for costs of court in the amount of $475; and
- **GRANTS** Joe Hand's request for post-judgment interest at the rate of 1.97% on all amounts awarded herein.

**SO ORDERED.**

**SIGNED: July 15, 2019.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE